1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   CYNTHIA DARLENE DODD,

8                          Plaintiff,          NO:  1:15-CV-3117-TOR

9          v.                                   ORDER GRANTING DEFENDANT'S
                                                MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting                   JUDGMENT
    Commissioner of Social Security
11  Administration,

12                         Defendant.

13

14       BEFORE THE COURT are the parties' cross-motions for summary

15  judgment. ECF Nos. 14; 17. This matter was submitted for consideration without

16  oral argument. The Court—having reviewed the administrative record and the

17  parties' completed briefing—is fully informed. For the reasons discussed below,

18  the Court grants Defendant's motion and denies Plaintiff's motion.

19  //

20  //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited:  the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id.* § 416.920(a)(4)(i). If the claimant is engaged in "substantial

1   gainful activity," the Commissioner must find that the claimant is not disabled. *Id.*

2   § 416.920(b).

3       If the claimant is not engaged in substantial gainful activities, the analysis

4   proceeds to step two. At this step, the Commissioner considers the severity of the

5   claimant's impairment. *Id.* § 416.920(a)(4)(ii). If the claimant suffers from "any

6   impairment or combination of impairments which significantly limits [his or her]

7   physical or mental ability to do basic work activities," the analysis proceeds to step

8   three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity

9   threshold, however, the Commissioner must find that the claimant is not disabled.

10  *Id.*

11      At step three, the Commissioner compares the claimant's impairment to

12  several impairments recognized by the Commissioner to be so severe as to

13  preclude a person from engaging in substantial gainful activity. *Id.*

14  § 416.920(a)(4)(iii). If the impairment is as severe as or more severe than one of

15  the enumerated impairments the Commissioner must find the claimant disabled

16  and award benefits. *Id.* § 416.920(d).

17      If the severity of the claimant's impairment does meet or exceed the severity

18  of the enumerated impairments, the Commissioner must pause to assess the

19  claimant's "residual functional capacity." Residual functional capacity ("RFC"),

20  defined generally as the claimant's ability to perform physical and mental work

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is

relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work"). *Id.* § 416.920(a)(4)(iv). If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is

not disabled. *Id.* § 416.920(f). If the claimant is incapable of performing such

work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

*Id.* § 416.920(a)(4)(v). In making this determination, the Commissioner must also

consider vocational factors such as the claimant's age, education and work

experience. *Id.* If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. *Id.* § 416.920(g)(1). If

the claimant is not capable of adjusting to other work, the analysis concludes with

a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The burden of proof is on claimant at steps one through four above. *Bray v.*

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).  If the analysis

proceeds to step five, the burden shifts to the Commissioner to establish that (1) the

claimant is capable of performing other work; and (2) such work "exists in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*

2    *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

3                                    **ALJ FINDINGS**

4            On April 30, 2012, Plaintiff filed an application for supplemental security

5    income, alleging a disability onset date of January 1, 1986. Tr. 135-40. Plaintiff's

6    claim was denied initially, Tr. 75-78, and upon reconsideration, Tr. 80-86.

7    Plaintiff requested a hearing before an ALJ, Tr. 87-89, which was held on February

8    5, 2014, Tr. 30-52.

9            On February 26, 2014, the ALJ rendered a decision denying Plaintiff's

10   claim. Tr. 9-29. At step one, the ALJ found that Plaintiff had not engaged in

11   substantial gainful activity since April 30, 2012, the application date. Tr. 14. At

12   step two, the ALJ found that Plaintiff had the following severe impairments:

13   depressive disorder not otherwise specified (NOS), anxiety disorder NOS, social

14   phobia, and personality disorder (NOS). Tr. 14. At step three, the ALJ found that

15   Plaintiff does not have an impairment or combination of impairments that meets or

16   medically equals a listed impairment. Tr. 24. The ALJ then concluded that Plaintiff

17   had the RFC

18          to perform a full range of work at all exertional levels. She is limited
            to working in small group settings (settings with one or two other
19          individuals and without access by the general public) or settings
            where she is working one-on-one with another individual. She can
            maintain appropriate interactions in such settings. She should have
20          superficial or no contact with the general public or large group

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1
2
3

settings. She can accept and follow instructions from a supervisor without additional accommodation. With these accommodations, she has no cognitive limitations regarding her ability to perform work activities.

4    Tr. 17. At step four, the ALJ found Plaintiff is capable of performing past relevant

5    work as a home attendant, a sorter/pricer, and a hand packager. Tr. 23. In the

6    alternative, the ALJ proceeded to step five and found that, considering Plaintiff's

7    age, education, work experience, and RFC, there are jobs in significant numbers in

8    the national economy that Plaintiff could perform. Tr. 24. On that basis, the ALJ

9    concluded that Plaintiff was not disabled as defined in the Social Security Act. Tr.

10   25.

11       On June 8, 2015, the Appeals Council denied Plaintiff's request for review,

12   Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

13   of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

14                                    **ISSUES**

15       Plaintiff seeks judicial review of the Commissioner's final decision denying

16   her supplemental security income under Title XVI of the Social Security Act.

17   Plaintiff raises the following four issues for this Court's review:

18       (1)  Whether the ALJ improperly rejected the medical opinion evidence;

19       (2)  Whether the ALJ improperly rejected Plaintiff's subjective complaints;

20       (3) Whether the ALJ erred by failing to conduct an adequate step four
             analysis; and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

(4) Whether the ALJ erred in her alternative step 5 finding, which was based on Medical-Vocational Rule 204.00.

ECF No. 14. The Court evaluates each issue in turn.

## DISCUSSION

### A.    Medical Opinion Evidence

First, Plaintiff faults the ALJ for improperly rejecting the medical opinion evidence. *Id.* at 12-19. In short, Plaintiff faults the ALJ for rejecting at least a subset of the opinions of each of the medical providers and consultants based on the inconsistency between their opinions and Plaintiff's daily activities and mental status examination results. *Id.* Plaintiff asserts that the ALJ "cherry-picked portions of their assessments to support the denial of benefits and then provided vague, cursory rejections of the remaining portions of their assessments that supported a finding of disability." *Id.* at 12-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

Factors relevant to evaluating any medical opinion "include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and other factors, such as the degree of understanding a physician has of the Administrations' 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

1   legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at

2   1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

3       "Where an ALJ does not explicitly reject a medical opinion or set forth

4   specific, legitimate reasons for crediting one medical opinion over another, he

5   errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an

6   ALJ errs when he rejects a medical opinion or assigns it little weight while doing

7   nothing more than ignoring it, asserting without explanation that another medical

8   opinion is more persuasive, or criticizing it with boilerplate language that fails to

9   offer a substantive basis for his conclusion." *Id.* at 1012-13. That being said, the

10  ALJ is not required to recite any magic words to properly reject a medical opinion.

11  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding that the Court

12  may draw reasonable inferences when appropriate). "An ALJ can satisfy the

13  'substantial evidence' requirement by setting out a detailed and thorough summary

14  of the facts and conflicting clinical evidence, stating his interpretation thereof, and

15  making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157

16  F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He

17  must set forth his own interpretations and explain why they, rather than the

18  doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725).

19  //

20  //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

### 1.  Dr. Goodwin, psychological examiner

Dr. James Goodwin examined Plaintiff in February 2011. Tr. 197-206. He opined that Plaintiff had moderate limitations in her abilities to perform routine tasks, to work in a setting with limited public contact, or to understand and persist at simple tasks. Tr. 199. He also opined that Plaintiff had marked to severe limitations in her abilities to learn new tasks, be aware of normal hazards, maintain appropriate behavior, understand and persist at complex tasks, and perform effectively in a setting with public contact. Tr. 199.

Even assuming the ALJ was required to provide clear and convincing reasons for rejecting the opinion of Dr. Goodwin—this Court notes Dr. Duris (2012 opinion) and Dr. Burdge disagreed with Dr. Goodwin's opinion in several areas of functioning—the ALJ provided adequate reasoning for affording Dr. Goodwin's opinion only limited weight. First, the ALJ found that Dr. Goodwin's opinion was contradicted by Plaintiff's activities, as detailed in Step 3 of the ALJ's analysis. Tr. 20 (referencing Tr. 15-16). Most notably, the ALJ had noted that Plaintiff had volunteered for the Fresh Air Art Fest by registering people, taking pictures, and setting up breakfast; had been working eight hours a week as an in-home caregiver, which included cleaning, cooking, doing laundry, and bathing her client; and continued to go for walks several times a day and socialize with a friend. *See* Tr. 15-16; *see Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

601-02 (9th Cir. 1999). Second, the ALJ found that Dr. Goodwin's opinion was contradicted by psychological findings in the record, as detailed in Step 3. Tr. 20 (referencing Tr. 15-16); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In particular, the ALJ noted that the evidence of record indicated that Plaintiff could maintain concentration, persistence, pace, and appropriate behavior in settings that accommodate her psychological symptoms and impairments. Tr. 20. Finally, the ALJ found that Plaintiff's psychological state had improved since Dr. Goodwin examined her in February 2011; specifically since she started consistently using medication at the proper dosage.[1] Tr. 18, 20; *see Garrison*, 759 F.3d at 1017 (holding that data points must constitute examples of a broader development of improvement rather than cherry-picked instances of improvement). The ALJ detailed this improvement just paragraphs earlier. Tr. 18-19 (detailing the medical findings after Plaintiff began consistently using the

---

[1] Plaintiff cites to record evidence demonstrating that she continued to tell medical providers that her medication was not working, ECF No. 14 at 14; however, her statements—which the ALJ later found to be not entirely credible—were not the focus of the ALJ's improvement finding. *See* Tr. 18-19 (discussing Plaintiff's improved mental health testing and observational evidence from May 2012 until her last documented appointment in November 2013).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    appropriate dosage of medication). Accordingly, this Court finds the ALJ properly

2    rejected the opinion of Dr. Goodwin.

### 2.  Dr. Duris, a psychological examiner

4        Dr. Duris examined Plaintiff in November 2011. Tr. 218-22. Dr. Duris

5    opined that Plaintiff was unable to persist at even simple and repetitive tasks and

6    would be significantly limited in her ability to adapt to changes, perform work-

7    related activities in a consistent manner, maintain attendance, maintain appropriate

8    interactions with coworkers, maintain a normal work schedule, ask simple

9    questions, perform effectively with even limited public contact, or complete a

10   normal workday without interruption. Tr. 220. Dr. Duris ultimately opined that

11   Plaintiff may be able to function in an entry-level work position with

12   accommodation. Tr. 220.

13       Even assuming the ALJ was required to provide clear and convincing

14   reasons for rejecting the opinion of Dr. Duris—this Court notes Dr. Duris'

15   subsequent 2012 opinion and the opinion of Dr. Burdge differed in several

16   respects—the ALJ provided adequate reasoning for not affording Dr. Duris'

17   opinion greater weight. First, the ALJ found that Dr. Duris' opinion was

18   inconsistent with Plaintiff's reported activities, previously detailed. Tr. 20; *see*

19   *Morgan*, 169 F.3d at 601-02. Second, the ALJ found that Dr. Duris' opinion was

20   inconsistent with the longitudinal psychological findings, including Dr. Duris' own

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

findings: "With Dr. Duris, the claimant displayed good grooming, cooperative and friendly behavior, euthymic mood, normal affective expression, normal stream of mental activity, intact memory, and appropriate judgment." Tr. 20; *see Batson*, 359 F.3d at 1195. Finally, the ALJ found that Dr. Duris' subsequent opinion supported a finding that Plaintiff could appropriately function in an environment that accommodates her symptoms and impairments. Tr. 20. Accordingly, this Court finds the ALJ properly weighed the opinion of Dr. Duris.

### 3.  Dr. Burdge, a psychological examiner

Dr. Burdge examined Plaintiff in 2013. Tr. 259-64. As a result of this examination, Dr. Burdge opined that Plaintiff had mild to no limitations in her abilities to plan independently, be aware of normal hazards, make simple work-related decisions, learn new tasks, perform routine tasks, or understand and persist at simple instructions. Tr. 261-62. Dr. Burdge also opined that Plaintiff had moderate limitations in her abilities to maintain appropriate behavior, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, complete a normal workday without psychological interruptions, or understand and persist at detailed instructions. Tr. 261-62.

Even assuming the ALJ was required to provide clear and convincing reasons for rejecting the opinion of Dr. Burdge, this Court finds the ALJ provided adequate reasoning for not giving Dr. Burdge's opinion greater weight. First, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

ALJ found Dr. Burdge's opinion was inconsistent with Plaintiff's reported activities, as detailed previously. Tr. 22; *see Morgan*, 169 F.3d at 601-02. Specifically, the ALJ highlighted that Plaintiff had reported to Dr. Burdge that she was working one day a week, engaged in hobbies including cooking, and cleaned and walked her dog daily. Tr. 22. Second, the ALJ found Dr. Burdge's opinion was inconsistent with the psychological findings, including Dr. Burdge's findings: "[D]uring Dr. Burdge's appointment, the claimant exhibited normal and fluent speech, normal motor activity, cooperative and friendly attitude, normal thought process, normal concentration, and alert and attentive behavior. She was able to recall three of three memorized items after a five-minute delay, and was able to recall six digits forwards and four digits backwards. Her performance on "trail-making" testing was within normal limits." Tr. 22; *see Batson*, 359 F.3d at 1195. Accordingly, this Court finds the ALJ properly weighed the opinion of Dr. Burdge.

### 4.  Other Sources

Medical sources such as social workers and therapists, are not "acceptable medical sources;" rather, these sources are more appropriately characterized as "other sources" and their opinions may be properly discounted if the ALJ provides "germane reasons" for doing so. *Molina*, 674 F.3d at 1111. Such "other source" opinions "must be evaluated on the basis of their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1  of their opinions, and whether the source has a specialty or area of expertise related

2  to the individual's impairment." SSR 06-03p, 2006 WL 2329939, at *4.

### a. Mr. Conley, a social worker

4  In November 2011, Mr. Conley opined that Plaintiff was "unable to be

5  around a lot of people," unable to have excessive pressure placed upon her, and

6  unable to work due to her psychological symptoms and limitations. Tr. 212.

7  Additionally, Mr. Conley opined that Plaintiff had moderate limitations in her

8  abilities to learn new tasks, perform routine tasks, maintain appropriate behavior in

9  a work setting, and understand and persist at complex restrictions; mild limitations

10  in her abilities to be aware of normal hazards and understand and persist at simple

11  instructions; and marked limitations in her ability to perform effectively in a work

12  setting with public contact. Tr. 213-14.

13  This Court finds the ALJ provided germane reasons for giving minimal

14  weight to Mr. Conley's opinion. First, the ALJ found Mr. Conley's opinion

15  inconsistent with Plaintiff's reported activities. Tr. 20. Second, the ALJ found Mr.

16  Conley's opinion inconsistent with psychological findings. Tr. 20. Finally, the ALJ

17  found that Mr. Conley did not have documented observation of Plaintiff before or

18  after November 2011; as the ALJ previously noted, Plaintiff's psychological issues

19  improved since April 2012, the application date. *See* SSR 06-03p, 2006 WL

20  2329939, at *4 (noting that the frequency of treatment is a relevant consideration

1    when weighing the opinion of an "other source"). Accordingly, the ALJ did not err

2    in providing limited weight to the opinion of Mr. Conley, an "other source."

3                    **b.  Ms. Powell, a mental health counselor**

4            In August 2013, Ms. Powell opined that Plaintiff was not limited in her

5    abilities to understand and remember simple or detailed instructions, carry out

6    short instructions, sustain an ordinary routine, and be aware of normal hazards;

7    mildly limited in her abilities to carry out detailed instructions, make simple work-

8    related decisions, and maintain appropriate behavior; moderately limited in her

9    abilities to maintain attention and concentration for extended periods, to perform

10   activities within a schedule, to work in proximity to others, to ask simple

11   questions, to accept instructions from supervisors, to respond appropriately to

12   changes in her work setting, to travel to unfamiliar places, and to make

13   independent plans; and marked limitations in her abilities to interact appropriately

14   with the general public, to get along with coworkers, and complete a normal

15   workday without psychological interruption. Tr. 265-67. Ultimately, however, Ms.

16   Powell noted that Plaintiff was making progress, working towards managing her

17   symptoms, and would likely benefit from work in the future. Tr. 267.

18           This Court finds the ALJ provided germane reasons for not accepting Ms.

19   Powell's opinion regarding moderate and marked limitations. First, the ALJ found

20   this part of Ms. Powell's opinion inconsistent with Plaintiff's reported activities

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

since her alleged onset date and discussed previously. Tr. 23. Second, the ALJ found this opinion inconsistent with the psychological findings since the alleged onset date and discussed previously. Tr. 23. Third, the ALJ found Ms. Powell's opinion internally inconsistent: "[T]his latter set of opinions is inconsistent with Ms. Powell's assertion that the claimant 'would likely benefit from work in the future' and that she was mildly limited in her abilities to make simple work-related decisions or maintain appropriate behavior, and that she was not limited in her ability to sustain an ordinary routine." Tr. 23. Accordingly, this Court finds the ALJ properly weighed the opinion of Ms. Powell, an "other source."

### 5. State Consultants

#### a. Dr. Colby, a state psychological consultant

In December 2011, Dr. Colby opined that Plaintiff had no significant limitations in her abilities to perform routine tasks, make simple work-related decisions, or understand and persist at simple or complex tasks and marked to severe limitations in her abilities to maintain appropriate behavior, ask simple questions, adapt to changes in a routine work setting, complete a normal workday without psychological interruption, or perform activity with a schedule and maintain regular attendance. Tr. 225. Ultimately, Dr. Colby opined that Plaintiff's psychological impairments did not appear to have met the durational requirements for disability. Tr. 223.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

1    This Court finds the ALJ properly afforded Dr. Colby's opinions of marked

2    to severe limitations minimal weight. The ALJ found that Dr. Colby's opinion was

3    based on the assessments of such limitations by Dr. Goodwin, Mr. Conley, and Dr.

4    Duris' 2011 opinion, whose opinions the ALJ properly rejected, as discussed

5    above. Tr. 21. Accordingly, this Court does not find error.

6                        **b.    Drs. Comrie & Gollogly**

7        In August 2012, Dr. Comrie opined that Plaintiff was able to perform at least

8    simple and repetitive tasks but would have a decrease in concentration and

9    persistence when attempting detailed work or when working in larger groups or

10   with the general public. Tr. 54-62. Dr. Comrie opined that Plaintiff would work

11   best away from the general public and with only superficial coworker interactions

12   and could follow goals set by others and would benefit from a consistent work

13   environment. Tr. 60. Dr. Gollogly, another state agency psychological consultant,

14   affirmed this opinion. Tr. 64-72.

15       This Court finds the ALJ properly weighed these opinions. The ALJ found

16   Plaintiff's activities and psychological findings since her application date and as

17   previously summarized were consistent with Plaintiff's ability to tolerate work

18   activities that do not involve interactions with large groups or more than superficial

19   and infrequent interaction with the general public and that Plaintiff's cognition,

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1    concentration, persistence, and pace are uncompromised in such settings. Tr. 21.

2    Specifically, the ALJ noted the following:

3         When psychologically evaluated in February 2013, the claimant
          exhibited normal thought process, normal concentration, and alert and
4         attentive behavior. She was able to recall three of three memorized
          items after a five-minute delay, and was able to recall six digits
5         forwards and four digits backwards. Her performance on "trail-
          making" testing was within normal limits. She reported that she was
6         still working one day a week. She stated that her hobbies included
          cooking. During psychiatric appointments in 2013, the claimant
7         consistently demonstrated normal speech and thought process, and
          intact memory and cognition. During her last documented medical
8         appointment in November 2013, the claimant reported having good
          energy and a normal activity level. She demonstrated alert mental
9         status. She denied having impaired memory.

10    Tr. 21 (internal record citations omitted). In light of this evidence, the ALJ gave

11    greater weight to other opinions finding mild or no limitations in Plaintiff's

12    abilities to understand, remember, and persist at complex tasks. Tr. 21.

13    Accordingly, this Court does not find error.

14         **B.    Adverse Credibility Finding**

15         Second, Plaintiff faults the ALJ for improperly rejecting her subjective

16    complaints. ECF No. 14 at 19-22. Specifically, Plaintiff rejects as invalid the

17    ALJ's three reasons for not fully crediting her testimony. *Id.*

18         An ALJ engages in a two-step analysis to determine whether a claimant's

19    testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

20    determine whether there is objective medical evidence of an underlying

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

1    In making an adverse credibility determination, the ALJ may consider, *inter*

2    *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

3    claimant's testimony or between his testimony and his conduct; (3) the claimant's

4    daily living activities; (4) the claimant's work record; and (5) testimony from

5    physicians or third parties concerning the nature, severity, and effect of the

6    claimant's condition. *Thomas*, 278 F.3d at 958-59.

7        At the hearing, Plaintiff testified that she was unable to work due to her

8    psychological symptoms, impairments, and limitations. Specifically, Plaintiff

9    testified that her panic attacks prevented her from attending work or persisting with

10   work and that she spent most of her time within her home. Plaintiff also indicated

11   that she avoided contact with other people. *See* Tr. 33-41.

12       This Court finds the ALJ provided several specific, clear, and convincing

13   reasons for finding Plaintiff's statements concerning the intensity, persistence, and

14   limiting effects of her symptoms "not entirely credible." Tr. 17.

15       First, the ALJ noted Plaintiff's minimal degree of mental health care despite

16   an alleged disability since 1986. Tr. 17-18. As of February 2011, Plaintiff had

17   never been treated before for psychological concerns. Tr. 18. While the failure to

18   seek mental health treatment may not be a legitimate basis to reject a claimant's

19   symptom claims, *see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), the

20

1  lack of credible evidence in the record corroborating the extent of mental health

2  limitations can be, *see Molina*, 674 F.3d at 1113-14.

3      Second, the ALJ found that Plaintiff's psychological functioning improved

4  after she commenced consistent psychiatric medication. Tr. 18. In support, the ALJ

5  detailed Plaintiff's medical records from May 2012 through November 2013, her

6  last documented medical appointment. Tr. 18-19. While "it is error to reject a

7  claimant's testimony merely because symptoms wax and wane in the course of

8  treatment," an ALJ may rely on examples of "broader development" of

9  improvement when finding a claimant's testimony not credible. *Garrison*, 759 F.3d

10  1017-18 ("While ALJs obviously must rely on examples to show why they do not

11  believe that a claimant is credible, the data points they choose must *in fact*

12  constitute examples of a broader development to satisfy the applicable 'clear and

13  convincing' standard."). As previously noted, although Plaintiff continued to tell

14  providers that her medication was not helping, the ALJ detailed Plaintiff's

15  improvements since she started a consistent course of treatment as shown in the

16  mental testing and observational evidence. *See* Tr. 18-19.

17      Finally, the ALJ found that Plaintiff's reported activities demonstrated

18  greater functioning. Tr. 19. Most notably, the ALJ found that Plaintiff had reported

19  volunteering for the Fresh Air Fest by registering people, taking pictures, and

20  setting up breakfast; providing in-home care eight hours a week, which included

cleaning, cooking, doing laundry, and bathing a client, and which activity Plaintiff indicated she enjoyed because did not have to deal with strangers; and taking her dog on walks several times a day and socializing with a friend. Tr. 19. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted). The ALJ did not err in finding that Plaintiff's activities contradicted her testimony that she was unable to persist in settings with even limited social contact.

In sum, despite Plaintiff's arguments to the contrary, the ALJ provided several specific, clear, and convincing reasons for rejecting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163.

### C.   Step Four Analysis

Third, Plaintiff faults the ALJ for failing to consider whether her past work constituted past *relevant* work, as defined under the regulations, and the effect of Plaintiff's mental limitations. ECF No. 14 at 22-24.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). Whether work

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

1  constitutes "past relevant work" requires a three-part analysis: whether (1) the

2  work was done within the last 15 years, (2) lasted long enough for the claimant to

3  learn to do it, and (3) was substantial gainful activity. *Id.* § 416.965(a). In turn,

4  "[s]ubstantial gainful activity is work activity that is both substantial and gainful":

5  (a) substantial work activity "is work activity that involves doing significant

6  physical or mental activities;" (b) gainful work activity "is work activity that you

7  do for pay or profit." *Id.* § 416.972. If the claimant is capable of performing past

8  relevant work, the Commissioner must find that the claimant is not disabled. *Id.*

9  § 416.920(f). If the claimant is incapable of performing such work, the analysis

10  proceeds to step five.

11      Here, and as the Commissioner concedes, ECF No. 17 at 31, the ALJ failed

12  to conduct a proper step four analysis because she failed to determine that

13  Plaintiff's past work as a home attendant, sorter/pricer, and hand packager were

14  performed at substantial gainful activity levels when she classified this work as

15  past relevant work.[2] Tr. 23-24.

16

17  [2] Plaintiff concedes that it is clear that these jobs were performed within the 15-

18  year period. ECF No. 14 at 23. And, regarding the duration this work was

19  performed, the ALJ eliminated past work that was not performed for a long enough

20  duration to qualify as past relevant work experience—child monitor, fast food

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

1    Nonetheless, this error was harmless. The ALJ conducted an alternative step

2 five finding and determined that, considering Plaintiff's age, education, work

3 experience, and RFC, Plaintiff was capable of performing other work in the

4 national economy. Tr. 24; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir.

5 2008) ("Although the ALJ's step four determination constitutes error, it is harmless

6 error in light of the ALJ's alternative finding at step five."). As discussed below,

7 the ALJ did not err at step five. Accordingly, the ALJ's step four finding

8 constitutes harmless error.

9    **D.    Step Five Finding**

10    Finally, Plaintiff faults the ALJ's step five finding, which Plaintiff contends

11 is based on the "grids" rather than vocational expert testimony. ECF No. 14 at 25-

12 26.

13    At step five, the burden shifts to the Commissioner to demonstrate that the

14 claimant can perform some work—considering the claimant's RFC, age,

15 education, and work experience—that exists in "significant numbers" in the

16 national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The

17    _____

18 worker, and agricultural sorter—which indicates that the ALJ did consider the

19 length of time Plaintiff performed this work. Tr. 23; *See* Tr. 47-48 (Hearing

20 Transcript).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

1   Commissioner can satisfy this burden in one of two ways: (1) by the testimony of a

2   vocational expert, or (2) by reference to the Medical-Vocational Guidelines, or

3   grids, where appropriate. *Id.* at 1101. Importantly, "a vocational expert's testimony

4   is required when a non-exertional limitation is sufficiently severe so as to

5   significantly limit the range of work permitted by the claimant's exertional

6   limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *see* SSR 85-15,

7   1985 WL 56857, at *3 (explaining that, in many cases, an ALJ will need to consult

8   a vocational expert in order to determine the effects of a claimant's nonexertional

9   impairments on his or her occupational base).

10      Here, the ALJ concluded in her alternative step-five finding that Plaintiff

11  was capable of performing jobs that exist in significant numbers in the national

12  economy. Tr. 24. Although the ALJ discussed the Medical-Vocational Guidelines

13  and did not directly reference the vocational expert's testimony in her alternative

14  step five finding, the ALJ expressly relied on the vocational expert's testimony in

15  initially finding that Plaintiff was capable of performing jobs as a home attendant,

16  sorter/pricer, and hand packager, which are light to medium work jobs with

17  specific vocational preparation ranging from 2 to 5. Tr. 23. Specifically, the ALJ

18  presented the following question to the vocational expert at the hearing:

19      Q:   So, we have an individual who is 46 years old, she has a GED,
            and she has past relevant work . . . . So, assume in this first
20      hypothetical this individual does not have any physical limitations or
            restrictions, full range of work activity exertional activity. This

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27

1   individual is limited to working in very small group settings or work
2   settings where she's working one-on-one with an individual. So, she
    can interact appropriately in small group settings. She does not have
3   any cognitive limitations nor restrictions in her ability to perform
    work activity. She would work best when she has superficial to no
4   interaction with the general public in large group settings. She can
    accept instructions, directions from her supervisor and follow those
5   work instructions and directions without any special supervision.
    What impact would those limitations or restrictions have on the type
6   of work this individual has performed in the past?

7   Tr. 48-49. In turn, the vocational expert opined that someone with these limitations

8   would be capable of performing work as a home attendant, sorter/pricer, and hand

9   packager. Tr. 49-50. Thus, the vocational expert's testimony provides direct

10  support for the ALJ's ultimate non-disability finding at step five.

11          Alternatively, even assuming the ALJ did not consider the vocational

12  expert's testimony when making her alternative step-five finding, Plaintiff's non-

13  exertional limitations were not "sufficiently severe" so as to significantly limit her

14  occupational base of unskilled work at all exertional levels. *See Hoopai*, 499 F.3d

15  at 1076; Medical-Vocational Guidelines, section 204.00. Specifically, the ALJ

16  found that Plaintiff's nonexertional limitations would have little to no effect on

17  Plaintiff's ability to perform work at all exertional levels. Tr. 24; *see* Tr. 23

18  (concluding that Plaintiff's nonexertional limitations could be alleviated with

19  proper accommodation). Importantly, Plaintiff has no physical limitations and, as

20  the ALJ noted, possesses the mental abilities required for competitive,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28

remunerative, unskilled work. Tr. 24 (noting that Plaintiff can understand, remember, and carry out instructions; make simple work-related decisions; respond appropriately to supervision, co-workers, and work situation; and deal with changes in a routine work setting); *see* SSR 85-15, 1985 WL 56857, at *4. Moreover, the ALJ highlighted that unskilled jobs ordinarily involve dealing primarily with objects and things, rather than with data or people, which helps alleviate Plaintiff's difficulty interacting with the public and others. Tr. 24. Finally, the ALJ noted in her step five finding that Plaintiff was a younger individual, as defined under the regulations, when she filed her application; has a high school education; and has prior work experience as a home attendant, sorter/pricer, and hand packager. Tr. 24. Thus, Plaintiff did not have adversities in age, education, and work experience that would affect her occupational base. *See* SSR 85-15, 1985 WL 56857, at *4. Accordingly, this Court does not find reversible error in the ALJ's alternative step five finding.

//

//

//

//

//

//

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is

  **GRANTED**.

The District Court Executive is directed to file this Order, enter **Judgment for Defendant**, provide copies to counsel, and **CLOSE** the file.

  **DATED** March 30, 2016.



THOMAS O. RICE
Chief United States District Judge